2026 Tex. Bus. 52



THE BUSINESS COURT OF TEXAS
EIGHTH DIVISION

| | | |
|---|---|---|
| JANICE L. SIMPSON, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Cause No. 25-BC08A-0012 |
| | § | |
| BOBBY R. SIMPSON and HARDBALL | § | |
| EXPRESS LLC, | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION

¶ 1    Before the Court are competing summary judgment motions: Plaintiff's Motion for Partial Summary Judgment & No Evidence Summary Judgment as to Affirmative Defenses ("Janice's Motion" or "Pl.'s Mot."), filed March 13, 2026, and Defendants' Motion for Summary Judgment [Unredacted] ("Defendants' Motion" or "Defs.' Mot."), also filed March 13, 2026.  The Court issued its Interlocutory Order on Plaintiff's Motion for Partial Summary Judgment & No Evidence Summary Judgment as to Affirmative Defenses and Defendants' Motion for Summary Judgment ("Interlocutory

Order") on April 30, 2026. The Interlocutory Order promised an Opinion further detailing its findings and conclusions.[1] Interlocutory Order at 4. This is the Opinion.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

¶ 2    Plaintiff Janice L. Simpson ("Janice") and Defendant Bobby R. Simpson ("Bob") married in 1998. Defs.' Mot. at 7. During their marriage, Bob acquired partial ownership of the Texas Rangers ("Rangers") baseball team and corresponding Class A, B, and E share ownership units ("Original Retained Interest"). *Id.* Bob possessed the Original Retained Interest both individually and as a member of Defendant Hardball Express LLC ("HBE") (together with Bob, "Defendants"). *Id.*

¶ 3    Janice and Bob began divorce proceedings in Tarrant County, Texas in 2016 and were officially divorced pursuant to an Agreed Final Decree of Divorce (the "Agreed Decree") in September 2021. Plaintiff's Second Amended Petition [Unredacted] ("Sec. Am. Pet.") at 5. The Agreed Decree specifically divided, *inter alia*, the Original Retained Interest within HBE. Pl.'s Mot., Ex. B. at 153-78; Defs.' Mot. at 127-51. The Agreed Decree awarded both Janice and Bob portions of the Original Retained Interest. Pl.'s Sec. Am. Pet. at 5. However, Bob maintained complete record ownership of the Original Retained Interest because Major League Baseball would not approve Janice as a Rangers share owner. Defs.' Mot. at 6. As a workaround, the Agreed Decree established a Constructive Trust for the Original Retained Interest.[2] Pl.'s Mot., Ex. B. at 169; Defs.' Mot. at 143.

---

[1] *See*, *infra*, at 5-6.

[2] Janice's attorneys drafted the provisions of the Agreed Decree relevant to this dispute. Pl.'s Mot., Ex. C., at 329; Defs.' Mot. at 57, 125.

¶ 4    As stated, under the Constructive Trust, Bob controlled and held Janice's awarded Original Retained Interest in his name ("Interests Held in Trust").  Sec. Am. Pet. at 5; Defs.' Mot. at 6.  Bob served as constructive trustee and Janice as sole beneficiary. Sec. Am. Pet. at 5.  The Constructive Trust also prescribed Bob's behavior should the Rangers issue a capital call or should Janice choose to sell her Interests Held in Trust.  Sec. Am. Pet. at 2; Pl.'s Mot., Ex. B. at 171; Defs.' Mot. at 6-9.  Most pertinent are the Constructive Trust provisions found in the Agreed Decree's Section 16.1(d), including Section 16.1(d)(1)(d) ("Section D"):

> If RBE or HBE makes a call for capital and B.R. SIMPSON is not expressly obligated to make a capital contribution pursuant to the terms of a governing document, then IT IS ORDERED that B.R. SIMPSON, at his election and without any liability by or to J. SIMPSON, may from his separate property, and only from his separate property (i) make a loan to the subject company as per the terms of the subject company agreement or (ii) make the requested capital contribution, as B.R. SIMPSON shall determine in his sole discretion, and (x) IT IS ORDERED that J. SIMPSON shall not be liable for payment of any portion of the capital call, and (y) IT IS ORDERED that B.R. SIMPSON shall have the right to receive any additional units issued by the subject company as a result of such additional contribution, even if such issuance is dilutive to the Interests Held in Trust.

Pl.'s Mot., Ex. B. at 171 (emphasis omitted); Defs.' Mot. at 32.

¶ 5    Since the Agreed Decree's finalization in September 2021, the Rangers have issued three capital calls: March 2025 ("March Capital Call"), August 2025 ("August Capital Call"), and February 2026.  Sec. Am. Pet. at 2-3; Defs.' Mot. at 11, 245-55.  Bob participated in each capital call using his separate property.  Defs.' Mot. at 11, 245-55; Sec. Am. Pet. at 2-3.  It is undisputed Bob did not notify Janice of the March Capital Call but did notify her of the other capital calls.  Sec. Am. Pet. at 2.  Janice claims Bob insisted the

Agreed Decree forbids Janice's participation in capital calls. *Id.* Janice did not participate in any capital call. *See id.* at 8-11, 12.

¶ 6    In June 2025, Bob entered into Unit Transfer Agreements ("UTAs"), whereby he contracted with another Rangers owner to sell certain Class B units in three installments. *See* Defs.' Mot. at 12, 256-79. The sale includes Bob's Class B Original Retained Interest and other units awarded him in the Agreed Decree. *Id.* Bob did not notify Janice when he entered into the UTAs. Sec. Am. Pet. at 2. Only one of the three installments has since closed and Bob still controls Janice's Interests Held in Trust, despite her unsuccessful efforts to sell. Defs.' Mot. at 12, 96, 99, 256-79.

¶ 7    Also in June 2025, Janice sued Bob for breach of fiduciary duty, breach of contract, and fraud by nondisclosure. Sec. Am. Pet. at 3. Janice maintains Bob diluted and/or devalued her Interests Held in Trust when he did not notify her of the March Capital Call. Sec. Am. Pet. at 8. She insists the Agreed Decree permits her to participate, at her election, in Rangers' capital calls. *Id.* at 2. Moreover, Janice claims Bob violated the Agreed Decree's tag-along provision by failing to notify her he contracted to dispose more than 50% of his Original Retained Interest. *Id.* at 6.

¶ 8    Janice filed her summary judgment motion on March 13, 2026, seeking judgment as a matter of law on her breach of fiduciary duty and breach of contract claims, and on Defendants' affirmative defenses. Pl.'s Mot. at 27. Bob responds the Agreed Decree lets him acquire shares without liability to Janice's Interests Held in Trust. Defendants'

Response to Plaintiff's Motion for Partial Summary Judgment & No Evidence Summary Judgment as to Affirmative Defenses ("Defs.' Resp.") at 5.

¶ 9 Defendants filed their competing summary judgment motion also on March 13, 2026. In their motion, Defendants argue Janice's claims fail because Bob was not obligated, as a fiduciary or under the Agreed Decree, to expand Janice's Interests Held in Trust but, even assuming, *arguendo*, he was obligated, Section D alleviates any liability resulting from his capital call participation. Defs.' Mot. at 6-7 ("Bob, as a trustee, is only obligated to maintain the assets ordered to be included and the beneficiary cannot unilaterally expand the scope of the court-ordered trust."). Defendants also seek summary judgment claiming Bob did not sell more than 50% of his Original Retained Interest to trigger tag-along rights and, alternatively, the UTAs did not damage Janice. *Id.* at 7.

¶ 10 Janice disagrees. She claims (1) the Agreed Decree allows her capital call participation and only permits Bob to dilute her Interests Held in Trust if she declines to participate in capital calls, and she claims (2) the UTAs comprised more than 50% of Bob's Original Retained Interest in HBE. Plaintiff's Response to Defendants' Motion for Summary Judgment at 4-5.

¶ 11 In its Interlocutory Order, the Court specifically denied Janice's Motion on her breach of contract claims against Defendants and as to Defendants' affirmative defenses. Interlocutory Order at 2. The Court further denied Janice's Motion on all breach of fiduciary duty claims, but took under advisement her breach of fiduciary duty claim arising out of Bob's failure to notify her of the March Capital Call. *Id.* The Court requested

further briefing addressing Janice's ability to obtain equitable relief for her breach of fiduciary duty claim arising from the March Capital Call. *Id.*

¶ 12    The Interlocutory Order also granted Defendants' Motion on Janice's breach of contract claims, fraud by nondisclosure claims, and on all but one of Janice's breach of fiduciary duty claims. Interlocutory Order at 2. Pending further briefing, the Court withheld its finding on Janice's breach of fiduciary duty claim arising from Bob's failure to notify her of the March Capital Call. *Id.* Janice subsequently notified the Court she seeks no equitable relief for Bob's alleged breach. *See* Plaintiff's Brief Regarding Equitable Relief for Defendants' Breach of Duty to Notify ("Pl.'s Equit. Rel. Br.").

## II.    LEGAL STANDARD

### A. Traditional Summary Judgment Motion

¶ 13    In a traditional motion for summary judgment, the movant has the burden of showing there is no genuine issue of material fact and he is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997). To prevail on a traditional summary judgment motion, a defendant must either conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Id.* Evidence is conclusive only if reasonable people could not differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 168 S.W.3d 802, 816 (Tex. 2005). Once the movant establishes a right to summary judgment as a matter of law, the burden shifts to the nonmovant to present evidence raising

a genuine issue of material fact. *Wal-Mart Stores, Inc. v. Xerox State & Loc. Sols., Inc.*, 663 S.W.3d 569, 584-85 (Tex. 2023).

### B. No-Evidence Summary Judgment Motion

¶ 14     A no-evidence summary judgment is akin to a pretrial directed verdict. *Mathis v. Restoration Builders, Inc.*, 231 S.W.3d 47, 50 (Tex. App.—Houston [14th Dist.] 2007, no pet.). Here, the movant represents there is no evidence of one or more essential elements of the claims for which the nonmovant bears the burden of proof at trial. TEX. R. CIV. P. 166a(i); *Lowe's Home Ctrs., Inc. v. GSW Mktg., Inc.*, 293 S.W.3d 283, 287 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). The Court sustains a no-evidence summary judgment when:

1. There is a complete absence of evidence of a vital fact;

2. The court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact;

3. The evidence offered to prove a vital fact is no more than a mere scintilla; or

4. The evidence conclusively establishes the opposite of the vital fact.

*Lowe's,* 293 S.W.3d at 287-88 (citing *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). "Evidence does not exceed a scintilla if it is so weak as to do no more than create a mere surmise or suspicion" that the challenged fact exists. *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 115 (Tex. 2009) (internal quotations omitted).

### III.    ANALYSIS

¶ 15    At the heart of Janice and Bob's dispute is their varied interpretations of the Agreed Decree.[3]  *See* Pl.'s Mot. at 16.  The parties have moved for summary judgment on the same causes of action.  The Court addresses each party's motion in turn.

## A.  JANICE'S PARTIAL SJ MOTION: TRADITIONAL

### a.  Janice's Fiduciary Duty Claims

¶ 16    For reasons stated herein, Janice's fiduciary-related claims against Bob fail as a matter of law except her claim arising out of Bob's failure to disclose the March Capital Call.  A plaintiff must prove each of the following elements to prevail on a breach of fiduciary duty claim:

1.  The existence of a fiduciary duty;
2.  Breach of the duty;
3.  Causation; and
4.  Damages resulting from the breach.

*First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017); *see also White v. White*, 704 S.W.3d 250, 269 (Tex. App.—El Paso 2024, no pet.).  A fiduciary duty arises "as a matter of law in certain formal relationships, including attorney-client, partnership, and trustee relationships."  *Ins. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998).  A trustee-beneficiary relationship gives rise to a fiduciary duty as a matter of law.  *Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex. 2005).

---

[3] Neither Janice nor Bob contend the Agreed Decree is ambiguous.  Sec. Am. Pet. at 16 ("[T]he parties agree that the Decree is unambiguous.").

¶ 17    Fiduciary duties apply to constructive trusts.  A constructive trust is court-created equitable remedy aimed at preventing unjust enrichment.  *Omohundro v. Matthews*, S.W.2d 401, 410 (1960); George Gleason Bogert & George Taylor Bogert, The Law of Trusts and Trustees § 471 (rev.2d ed. 1983) ("The court may issue a decree that the defendant convey [property] to the plaintiff.").  The constructive trust document declares a constructive trustee and directs the trustee on conveying trust property to the plaintiff.  *Id.* A constructive trustee has several fiduciary obligations directed at protecting the beneficiary's interest, including a duty to administer the trust for the benefit of its beneficiaries.  *Huie v. DeShazo*, 922 S.W.2d 920, 924 (Tex. 1996); *McLendon v. McLendon*, 862 S.W.2d 662, 670 (Tex. App.—Dallas 1993, writ denied).  Notably, a constructive trust may contain exculpatory language permitting a trustee to act in a manner that may otherwise constitute a breach of duties.  *See, e.g., Tex. Com. Bank, N.A. v. Grizzle*, 96 S.W.3d 240, 248 (Tex. 2002); *Clifton v. Hopkins*, 107 S.W.3d 755, 761 (Tex. App.—Waco 2003, no pet.).

¶ 18    A plaintiff seeking actual damages for a breach of fiduciary duty must satisfy all requisite elements.  *Parker*, 514 S.W.3d at 220.  Courts may also impose equitable remedies for breaching a fiduciary duty.  *ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 873 (Tex. 2010); *Grant Me the Wisdom Found., Inc. v. Boyar*, 716 S.W.3d 916, 929 (Tex. App.—Houston [14th Dist.], pet. denied) (equitable remedies available in some circumstances for a breach of fiduciary duty).  "[T]he central purpose of [an equitable] remedy is to protect relationships of trust from an agent's disloyalty or other misconduct."

*Id.* (citing *Burrow v. Arce*, 997 S.W.2d 238 (Tex. 1999) (upholding remedy of forfeiture upon attorney's breach of fiduciary duty)). If a plaintiff proves the duty's existence and breach, equitable relief may be available even absent proof of causation and damages. *Boyar*, 716 S.W.3d at 929 (citing *Burrow*, 997 S.W. 2d at 240). A court may award an equitable remedy even if the fiduciary does not obtain a benefit from violating his duty. *Diakiw v. Stites Mgmt., L.L.C.*, 693 S.W.3d 582, 598 (Tex. App.—Houston [14h Dist.] 2023, no pet.) (citing *Daniel v. Falcon Interest Realty Corp.*, 190 S.W.3d 177, 185 (Tex. App.—Houston [1st Dist.] 2005, no pet.)).

¶ 19    The summary judgment evidence before the Court expressly delineates Bob's fiduciary duties. The Agreed Decree categorizes Bob's duties:

> The Parties agree and IT IS FURTHER ORDERED that constructive trustee, B.R. SIMPSON shall act in a fiduciary capacity with respect to the Interests Held in Trust and as a fiduciary, IT IS ORDERED that B.R. SIMPSON shall owe J. SIMPSON the highest degree of loyalty and full disclosure with respect to [the Duty to Preserve]"

Pl.'s Mot., Ex. B. at 169 (emphasis omitted). Section D delineates Bob's fiduciary obligations to Janice with respect to capital call contributions and the Interests Held in Trust:

> d.    If RBE or HBE makes a call for capital and B.R. SIMPSON is not expressly obligated to make a capital contribution pursuant to the terms of a governing document, then IT IS ORDERED that B.R. SIMPSON, at his election and without any liability by or to J. SIMPSON, may from his separate property, and only from his separate property (i) make a loan to the subject company as per the terms of the subject company agreement or (ii) make the requested capital contribution, as B.R. SIMPSON shall determine in his sole discretion, and (x) IT IS ORDERED that J. SIMPSON shall not be liable for payment of any portion of the capital call, and (y) IT IS ORDERED that B.R.

> SIMPSON shall have the right to receive any additional units issued by the subject company as a result of such additional capital contribution, even if such issuance is dilutive to the Interests Held in Trust.

*Id.* at 171 (emphasis omitted). Section D provides a fiduciary shield for Bob, absolving him of any liability should he dilute Janice's shares.[4] Pl.'s Mot., Ex. B at 171 (emphasis omitted); Defs.' SJ Mot. at 32.

1. Duty of Loyalty

¶ 20    The summary judgment evidence demonstrates Bob self-dealt and breached his fiduciary duty of loyalty to Janice; however, Janice cannot prevail on her claim because Bob's conduct is expressly permitted and/or Janice was not damaged by Bob's breach. Fiduciaries, among other duties they may owe, generally owe their principals a duty of loyalty. *See Dandachli v. Active Motorwerks, Inc.*, No. 03-19-00494-CV, 2021 WL 3118437, at *5 (Tex. App.—Austin 2021, no pet.) (mem. op.); *Wolf v. Ramirez*, 622 S.W.3d 126, 142 (Tex. App.—El Paso 2020, no pet.). The duty of loyalty is synonymous with the duty against self-dealing. *White*, 704 S.W.3d at 269. In a self-dealing claim, the fiduciary uses the advantage of his position to gain a benefit or profit at the expense of those to whom he owes a fiduciary duty. *See Roels v. Valkenaar*, No. 03-19-00502-CV, 2020 WL 4930041, at *6 (Tex. App.—Austin 2020, no pet.) (mem. op.) (to establish "a claim for breach of fiduciary duty based on self-dealing, a plaintiff must demonstrate that the fiduciary obtained a benefit for itself either at the expense of its principal or without equally sharing

---

[4] The Agreed Decree's Section 16.1(d)(1)(e) also absolves Bob of liability for diluting Jance's interest if he uses his separate property to fund mandatory capital calls. Pl.'s Mot., Ex. B. at 171.

the benefit with the principal") (citing *KCM Fin. LLC v. Bradshaw,* 457 S.W.3d 70, 83 (Tex. 2015) (holding the "essence" of self-dealing is fiduciary's misappropriating for itself what "would have been a shared benefit" with principal); *see also Mims-Brown v. Brown*, 428 S.W.3d 366, 374-75 (Tex. App.—Dallas 2014, no pet.) (recognizing "[s]elf-dealing can be generally defined as an occurrence in which the fiduciary uses the advantage of his position to gain a benefit at the expense of those to whom he owes a fiduciary duty."). Thus, there can be no finding of self-dealing in the absence of evidence a fiduciary profited from his actions. *See Gillespie v. Hernden*, 516 S.W.3d 541, 555 (Tex. App.—San Antonio 2016, pet. denied) (concluding plaintiff's claim attorney engaged in self-dealing was unsupported by the record where evidence conclusively proved benefit to attorney was shared equally with clients).

¶ 21    Janice's motion lists multiple instances where Bob allegedly breached his duty of loyalty:

1. When Bob entered into UTAs to sell more than 50% of his Original Retained Interest;

2. When Bob failed to notify her of the March Capital Call and when Bob disallowed her participation in the August Capital Call; and

3. When Bob voted for issuing capital calls and when Bob voted in manners benefitting the Rangers instead of Janice.

Pl.'s Mot. at 19, 21-22.

### i.  Bob's UTAs

¶ 22    Janice cannot prevail on her claim Bob breached his duty of loyalty by entering into  and failing to notify Janice of the UTAs because the contract did not trigger

the Agreed Decree's Section 16.1(d)(1)(f) ("Section F"). Section F contains a tag-along

provision prescribing Bob's actions should he dispose 50% of his Original Retained Interest:

> B.R. SIMPSON may Dispose of up to 50% of his Original Retained Interest . . . in HBE and/or RBE, at any time and from time to time in his sole discretion, without restriction hereunder. If B.R. SIMPSON elects at any time to Dispose more than 50% of his Original Retained Interest in HBE and/or RBE (calculated cumulatively, whether in one or more separate transactions), IT IS ORDERED that B.R. SIMPSON shall provide J. SIMPSON with 15 day's prior written notice of such proposed Disposition, including the material terms of the proposed Disposition, and J. SIMPSON shall then have the right and option, exercisable in her sole discretion within such 15-day notice period, to elect to treat the proposed Disposition as including a pro rata share of the Interests Held in Trust.

Pl.'s Mot., Ex. B. at 171-72 (emphasis omitted). Plainly, if Bob sells Bob's 50% of his

Original Retained Interest, Section F lets Janice join her *pro rata* ownership interests with

Bob's sale.

¶ 23    Janice alleges Bob's contract to sell approximately 18 Class B Units disposed

over 50% of his Original Retained Interest and triggered her rights under Section F. Pl.'s

Mot. 13-14. By failing to notify her of the sale, Janice alleges she lost the opportunity to

sell her shares to a third party. Sec. Am. Pet. at 13, 14; Pl.'s Mot. at 24 ("Had Janice

participated in the June UTAs, as was her right, she would now have cash instead of illiquid

shares controlled by a self-dealing fiduciary.").

¶ 24    Defendants disagree. Bob does not contest he owned approximately 18 Class

B units, but argues only 9 Class B Units comprised his Original Retained Interest. Defs.'

Mot. at 24, 131, 245 (listing partitioned unit amounts). Bob states he acquired 9 additional

Class B units in March 2025 and those 9 later-acquired Class B units can never be counted

as part of his Original Retained Interest. *Id.* He claims he "only sold those units originally awarded to [him in the Agreed Decree]" and claims the sale amount did not trigger Section F's 50% provision. Defs.' Resp. at 12; Defs' SJ Mot. at 25. In sum, Bob claims Janice is combining all his Class B shares together when only half were Original Retained Interest shares able to trigger Section F. Alternatively, Defendants contend Janice suffered no damages from Bob's sale because Janice still retains her Class B units as originally valued. Defs.' Mot. at 26, 101.

¶ 25   The Court finds the UTAs did not trigger Section F and, therefore, Bob did not violate its tag-along provision. As a threshold matter, Bob did not sell more than 50% of his Original Retained Interest. Defined above, "Original Retained Interest" is Bob's court-awarded and partitioned interest in HBE. Pl.'s Mot., Ex. B. at 172; Defs.' Resp. at 12; Defs.' Mot. at 24-25. The Agreed Decree awarded 49 HBE units as Janice's Interests Held in Trust and awarded Bob 36 HBE units as his Original Retained Interest. Pl.'s Mot., Ex. B. at 153-54. There were originally 9 Class B shares within Bob's 36 HBE units. Defs.' Mot. at 130-31. Indeed, Bob acquired an additional 9 Class B units via the March Capital Call, but the later-acquired 9 Class B units were not included in the UTAs. *Id.* at 245.

¶ 26   In contracting to sell 9 Class B units of his 36 HBE units, Bob contracted to dispose only 25% of his Original Retained Interest. This percentage is well-below Section F's threshold and, therefore, did not trigger his obligation to provide Janice with 15 days' prior written notice of the proposed sale. Bob could not breach any duty with respect to the UTAs because Section F was never triggered. Therefore, Bob did not violate his duty of

loyalty owed to Janice as it relates to the UTAs. Janice's Partial SJ Motion on this ground must be **DENIED**.

### ii.     *Bob and the Capital Calls*

¶ 27    Janice cannot prevail on her claim Bob breached his duty of loyalty by failing to notify her of the March Capital Call because Section D exculpates Bob and Janice did not sustain any recoverable damages by his breach. In a letter from her counsel to Bob, Janice claims the Agreed Decree imposed a duty of loyalty applicable to capital call disclosures. Pl.'s Mot., Ex. R. at 483. In support, she cites the Agreed Decree's duty to disclose language:

> [W]ithin 24 hours of receipt . . . [Bob shall furnish to Janice] true, correct, complete copies of any written digital information [Bob] receives regarding [] HBE, and/or the Interests Held in Trust solely to the extent that such information is generally made available to all owners of the RBE.

*Id.* (quoting Pl.'s Mot., Ex. B at 175). She furthers, "[h]ad Ms. Simpson received the required copy of the Notice, she would have made the necessary capital contribution from her separate property to ensure that the issuance of additional units was not dilutive to the interests held in the Constructive Trust." *Id.*, Ex. R. at 483.

¶ 28    For his part, Bob argues Section D's exculpatory language "is an exception to such generic statements of fiduciary duty." Defs.' Mot. at 21; Defs.' Resp. at 8. He urges the Agreed Decree must be interpreted "in light of the operative text's surrounding words and structure." *Id.* (citing *U.S. Polyco, Inc. v. Tex. Cent. Bus. Lines Corp.*, 681 S.W.3d 388 at 390 n.3 (Tex. 2023)). Notwithstanding, Bob insists "Janice has not suffered any harm

based on any lack of notice" and "any alleged violation of the notice provision is harmless." *Id*. at 27.

¶ 29    The Court finds Bob should have notified Janice of the March Capital Call. It is undisputed Bob had 24 hours from receipt of information regarding shares (i.e.: capital calls) to contact Janice but he did not. Pl.'s Mot., Ex. B. at 175. But while the evidence supports Bob put his own interests (a desire to grow his Rangers shares) above preserving Janice's Interests Held in Trust, Section D permits such behavior. Further, despite Bob's skirting his notification duty, Janice was not damaged in any manner uncontemplated or unpermitted by Section D. Janice's hypothetical capital call participation only lends itself, at best, to non-recoverable speculative damages. *Checker Bag Co., a Div. of Checker Food Pro. Co. v. Washington*, 27 S.W.3d 625, 634 (Tex. App.—Waco 2000, pet. denied) (largely speculative profits are not recoverable as damages); *See Ramco Oil & Gas Ltd. v. Anglo-Dutch (Tenge) L.L.C.*, 207 S.W.3d 801, 808 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (in breach of contract action, plaintiff cannot recover profits that are largely speculative and derivative of "chancy business opportunities.").[5] Notwithstanding, Janice seeks no equitable relief from Bob's breach. *See* Pl.'s Equit. Rel. Br. Janice's Motion must be **DENIED** because she has not satisfied the requisite elements to prevail on this claim.

---

[5] The Court notes Janice's claim she would have participated in the March Capital Call had she received notice directly contradicts Janice's long-held intention to sell her shares and rid herself of Rangers obligations.

### iii. Bob's Votes

¶ 30    Bob did not breach his duty of loyalty to Janice by voting for Rangers' capital calls, nor did Bob breach his duty of loyalty to Janice by voting to benefit the Rangers over Janice.  By way of background, in early 2025 and again in August 2025, Bob and the Rangers' board voted for and approved issuing capital calls.  Pl.'s Mot. at 11.  Janice relies on the Agreed Decree's Section 16.1(d)(1)(c) ("Section C") to claim Bob should have voted in a manner that preserved her Interests Held in Trust over the Rangers' benefit.  *Id.* at 13.  She claims Bob's vote for capital calls devalued her ownership interest.  *Id.*  Bob does not disagree the March Capital Call and the August Capital Call devalued her interest, but insists the Agreed Decree lets him  vote for capital calls despite any resulting share devaluation.  Pl.'s Mot., Ex. C. at 333 (["The vote] was permitted to dilute her, as provided in the divorce decree.  It's black and white.").  Bob further avers his votes are consistent with the fiduciary duties he owes the Rangers.  Defs.' Mot. at 23.

¶ 31    Bob was permitted to exercise his voting rights as a Rangers board member and under the Agreed Decree.  Section C forbids Bob from voting in a manner causing Janice dilution relative to any other member with her same unit shares:

> IT IS ORDERED that neither B.R. SIMPSON nor any entity controlled by B.R. SIMPSON shall vote any of the Simpson Baseball Interest in favor of taking any action that could dilute or devalue the Interests Held in Trust to a greater degree (determined on a pro rata basis per unit of membership interest) than the other owners of membership interests of the same class as the Interests Held in Trust, including but not limited to the Simpson Baseball Interest retained by B.R. SIMPSON. Whenever the organizational documents or applicable law give B.R. SIMPSON the right, privilege, option, duty, or obligation to vote the units, shares, or interests titled in his name or in the name of HBE (hereafter called "voting rights"), or call for a vote by all who

are record title holders of the units, shares or interests, then, subject to the MLB Rules and Regulations, IT IS ORDERED that neither B.R. SIMPSON nor an entity controlled by B.R. SIMPSON, shall exercise such voting rights to vote, consent, or approve any action or omission by the business organization that would dilute or devalue the Interests Held In Trust to a greater degree (determined on a pro rata basis per unit of membership interest) than the other owners of membership interests of the same class as the Interests Held in Trust.

Defs.' Mot. at 144 (emphasis omitted). Section C speaks to capital call requests treating Janice's Interests Held in Trust differently than other owners. In such scenario, Bob could not vote without Janice's consent because Janice's Interests Held in Trust would be devalued greater than other Rangers' owners. Section C's contemplated scenario did not occur in March 2025 or August 2025—instead, Bob voted for all-member capital calls with participating members receiving shares relative to their ownership percentage. Defs.' Mot. at 245-55. Bob's vote for capital calls did not violate his duty of loyalty to Janice under Section C. Janice's Motion must be **DENIED** on this claim.

¶ 32    Janice's assertion Bob breached his duty of loyalty to her by voting to benefit the Rangers similarly fails. Bob testified at his deposition: "I'm not voting for capital calls. I'm voting for the benefit of the Rangers, not trying to pursue reducing her interest." Pl.'s Mot., Ex. C. at 309. As a Rangers' board member, Bob clearly maintains a fiduciary obligation to the organization. Worth noting is Section D's language paralleling his right to free participation. *See* Pl.'s Mot. Ex. B. at 171 (Section D language). Based on the foregoing, the Court finds Bob's vote did not breach his duty of loyalty. Janice's Motion must be **DENIED** on this ground.

2. Duty of Full Disclosure

¶ 33    While Bob breached his duty of full disclosure, he is exculpated by Section D's terms and Janice suffered no recoverable damages.  A trustee owes the beneficiaries a duty of full disclosure of all material facts known to them that might affect the rights of the beneficiaries.  *DeShazo*, 922 S.W.2d at 923.  The trustee has a duty to deal openly with its beneficiary and to fully disclose to the beneficiary information about matters affecting the trust.  *See, e.g.*, *Daniel v. Falcon Interest Realty Corp.*, 190 S.W.3d 177, 185 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

¶ 34    Janice argues Bob breached his duty of full disclosure twice: first when he entered into UTAs to sell more than 50% of his of his Original Retained Interest and again when he failed to notify her of the March Capital Call.  Pl.'s Mot. at 22.  As previously discussed, the Court concluded that Bob did not contract to sell more than 50% of his Original Retained Interest and, therefore, under Section F, Bob did not violate his disclosure obligation.  *See*, *infra*, at 15-16.

¶ 35    Bob did breach the Agreed Decree's disclosure provision when he did not disclose the March Capital Call to Janice.  Bob's disclosure and notification duties were both agreed and express: within 24 hours, Bob must notify Janice of any information he receives as a Rangers' owner.  *See* Pl.'s Mot., Ex. B. at 175.  He did not do so.  Capital call disclosures squarely fall under the "24 hour" disclosure umbrella.  But, believing Janice had no right to participate in capital calls, Bob elected not to inform Janice of the March Capital Call.  *See id.*, Ex. C. at 310-11.  Bob's faulty belief wholly undermines the

Constructive Trust's notice obligations. Bob clearly breached his duty to disclose the March Capital Call. However, Bob's liability for such failure is eliminated by Section D's exculpatory language permitting Janice's dilution. *See* Pl.'s Mot. Ex. B at 171 (Section D language).

¶ 36 Janice is not entitled to recover either actual damages or equitable remedies for Bob's breach. Because nothing before the Court depicts Janice sustained recoverable injuries from Bob's failure to disclose the March Capital Call, Janice cannot obtain actual damages. Again, Janice does not seek equitable relief from Bob's breach. *See* Pl.'s Equit. Rel. Br. Therefore, Janice recovers nothing from Bob's failure to disclose the March Capital Call. Janice's Motion on this claim must be **DENIED**.

3. Duty to Preserve

¶ 37 Bob did not violate his duty to preserve. It is uncontested that, as constructive trustee, Bob owes Janice the highest duty to preserve her Interests Held in Trust. Pl.'s Mot., Ex. B at 169. Sections D and E contemplate that duty in the context of adding shares to the Constructive Trust's corpus. *See id.* at 171. But Sections D and E do not cloak Bob in *additional* liability should Bob purchase more shares and reduce Janice's portion of the Original Retained Interest. *See id.* Nor do the two sections saddle Bob with additional responsibilities outside of holding and maintaining Janice's Interests Held in Trust until she chooses to sell them. *Id.* By participating in the March Capital Call, Bob neither amended, modified, nor disposed of the Constructive Trust's original corpus in

violation of his duty. *See* Pl.'s Mot., Ex. B. at 169. Accordingly, Janice's Motion is **DENIED** on her duty to preserve claim.

### b. Janice's Breach of Contract Claims

¶ 38    While Bob breached the Agreed Decree, Janice is not entitled to damages arising from his breach; Janice's claim against the Defendants for breach of HBE's Amended and Restated Company Agreement ("HBE's Amended Company Agreement") similarly fails as a matter of law.

To prevail on a breach of contract claim, the plaintiff must prove:

1. The existence of a valid contract;
2. The plaintiff performed its obligations under the contract;
3. The defendant breached the contract; and
4. The plaintiff sustained damages resulting from the breach.

*Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019). A third party may have standing to recover on a breach of contract if the Court determines it is a contract beneficiary. "To establish standing to assert a breach of contract cause of action, a party must prove its privity to the agreement or that it is a third-party beneficiary." *Maddox v. Vantage Energy*, LLC, 361 S.W.3d 752, 756 (Tex. App.—Fort Worth 2012, pet. denied). A third party may recover on a contract between other parties if the contracting parties intended to attach a benefit to the third party and if the contracting parties entered into the contract directly for the third party's benefit. *Basic Cap. Mgmt. v. Dynex Com., Inc.*, 348 S.W.3d 894, 900 (Tex. 2011). In order to be an intended third-party beneficiary, the party must show that it is either a donee or creditor beneficiary to the contract. *Esquivel v. Murray Guard, Inc.*, 992 S.W.2d 536, 543 (Tex. App.—Houston [14th Dist.] 1999, pet.

denied). A third party cannot enforce a contract if the contract confers only an indirect or incidental benefit. *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011).

¶ 39        Here, Janice argues Bob breached the Agreed Decree in three ways: through Section F's tag-along provision, by failing to notify her of the March Capital Call, and by breaching the fiduciary duties listed in the Agreed Decree. Sec. Am. Pet. at 13.

1.  The Agreed Decree

    i.      *The Tag-Along Provision*

¶ 40    Bob did not breach the Agreed Decree's tag-along provision. As threshold matters, the Agreed Decree is a valid, enforceable contract and Janice enjoys third-party creditor beneficiary standing to bring her claim. The Court incorporates its above finding that the UTAs did not dispose 50% of Bob's Original Retained Interest. *See*, *supra*, at 14-16. Therefore, Bob did not violate Section F's tag-along provision and Janice's Motion is **DENIED** on this claim.

    ii.     *Failure to Notify Janice of the March Capital Call*

¶ 41    While Bob breached the Agreed Decree's notification provision, Janice cannot prevail because she suffered no resulting and recoverable damages. Janice avers Bob had a contractual obligation to notify her of the March Capital Call, he did not, and, consequently, her shares were devalued. Pl.'s Mot. at 25-26. Bob insists he had no contractual obligation allowing Janice capital call participation. Defs.' Mot. at 12.

¶ 42    The Court incorporates its previous findings: the Agreed Decree is a valid contract and Janice has standing to bring her claim. *See*, *supra*, at 22. As discussed above, the Agreed Decree mandates Bob provide Janice notice of events that may affect her shares:

> [W]ithin 24 hours of receipt . . . [Bob shall furnish to Janice] true, correct, complete copies of any written digital information [Bob] receives regarding [] HBE, and/or the Interests Held in Trust solely to the extent that such information is generally made available to all owners of the RBE.

Pl.'s Mot., Ex. B. at 175. The summary judgment evidence before the Court confirms the March Capital Call falls within the "information" received regarding Janice's Interests Held in Trust. Pl.'s Mot., Ex. B. at 175; Defs.' Mot. at 165, 169 (Rangers Capital Call to Bob, Rangers Capital Call to HBE). It also supports Janice's claim Bob failed to tender contractually required performance: he did not notify Janice of the March Capital Call. Bob breached the Agreed Decree by failing to notify Janice of the March Capital Call.

¶ 43    But Janice's summary judgment evidence fails to demonstrate she sustained recoverable damage from Bob's breach. The lack of notice did not, in and of itself, dilute her shares. Further, any potential "loss of the opportunity to sell a pro-rata share of units" is merely projection. *See*, *supra*, at 13. As Janice seeks no equitable relief, she recovers nothing from Bob's contractual breach. *See* Pl.'s Equit. Rel. Br. Accordingly, Janice's Motion on this claim must be **DENIED**.

### iii.    *Breach of Fiduciary Duties Listed in Agreed Decree*

¶ 44    Bob breached certain fiduciary obligations under the Agreed Decree when he did not notify Janice of the March Capital Call; however, Bob avoids liability under Section D. Janice again relies on the Agreed Decree's express fiduciary mandate:

> The Parties agree and IT IS FURTHER ORDERED that constructive trustee, B.R. SIMPSON shall act in a fiduciary capacity with respect to the Interests Held in Trust and as a fiduciary, IT IS ORDERED that B.R. SIMPSON shall owe J. SIMPSON the highest degree of loyalty and full disclosure with respect to [the Duty to Preserve]"

Pl.'s Mot., Ex. B. at 169 (emphasis omitted). The Agreed Decree both obligates and limits Bob with respect to Janice's Interests Held in Trust and for capital call contributions. *Id.* at 171. For his part, Bob relies on Section D's exculpatory shield, absolving him of any liability should Janice's interests be diluted because of his actions. Defs.' Mot. at 32; Defs.' Resp. at 12.

¶ 45 The Court incorporates its above findings that the Agreed Decree is a valid contract, that Janice has third-party creditor beneficiary standing, and that Bob breached his obligations to notify Janice about the March Capital Call. *See*, *supra*, at 22-23. However, in examining the Agreed Decree's language as a whole, the Court finds Section D absolves Bob of liability from his breaches: it provides Bob with discretion, at his election and without liability to Janice, to act in ways that may dilute Janice's Rangers' interest. *See* Defs.' Mot. at 32; Defs.' Resp. at 12-14. Again, the unmitigated rights and the liability shield effectively negate any contractual remedy Janice seeks for Bob's fiduciary breaches. Based on the foregoing, Janice's Motion on this claim must be **DENIED**.

2. HBE's Amended Company Agreement

¶ 46 The UTAs did not trigger Section F's tag-along provision and, therefore, the Defendants did not breach HBE's Amended Company Agreement. Janice argues Bob, as HBE's sole member, breached HBE's Amended Company Agreement because the UTAs

were binding "disposition[s]" and triggered certain rights and obligations to her under the Amended Company Agreement and the Agreed Decree's Section F. *See* Pl.'s Mot. at 11. Bob again argues Janice incorrectly groups the 9 later-acquired Class B shares with the original 9 shares comprising his Original Retained Interest. Defs.' Mot. at 9, 12, 24, 146; Defs.' Resp. at 11-12. He argues he was not contractually obligated to disclose his sale and, "[e]ven assuming Bob was required to disclose such sale to Janice, such failure was an immaterial breach because it did not cause Janice any damages." *See* Defs.' Motion at 12-13; Defs.' Resp. at 13.

¶ 47 HBE's governing document mandates Bob may not "take any actions with respect to the [Interests Held in Trust] . . . that are not expressly authorized and permitted by the Decree or are otherwise inconsistent with the provisions of the Decree." Pl.'s Mot., Ex. P at 289. The Court agrees with Janice's characterization of the UTAs as binding "dispositions." *See* Pl.'s Mot. at 11. But, incorporating its previous finding that Bob contracted to dispose only 25% of his Original Retained Interest, the sale did not trigger Section F. *See*, *supra*, at 14-16, 23-24. Neither Bob nor HBE breached HBE's Amended Company Agreement because Bob did not take any impermissible action with respect to Janice's Interests Held in Trust and Bob's actions did not trigger Section F. *See* Pl.'s Mot., Ex. P at 289.

¶ 48 And, while Janice argues she lost an opportunity to sell a portion of her shares to a third party, she ignores that her interests remained intact and were not devalued despite Bob's contract. Again, Janice cannot recover hypothetical sale damages. *Ramco*, 207

S.W.3d at 808.  Accordingly, Janice's Motion on her claim for breach of HBE's Amended Company Agreement must be **DENIED**.

### c. Janice's Fraud by Nondisclosure Claims

¶ 49    Janice's two fraud by nondisclosure claims fail because Bob is shielded from liability by Section D and because Bob never triggered Section F.  Fraud by nondisclosure, a subcategory of fraud, occurs when a party has a duty to disclose certain information and fails to disclose it.  *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997). Fraud by nondisclosure has four elements:

1. A party fails to disclose a material fact within its knowledge;

2. The party knows the other party is ignorant of the fact and does not have an equal opportunity to discover the truth;

3. The party intends to induce the other party to take some action by failing to disclose the fact; and

4. The other party suffers injury as a result of acting without knowledge of the undisclosed fact.

*Daugherty v. Jacobs*, 187 S.W.3d 607, 617 (Tex. App.—Houston [14th Dist.] 2006, no pet.). Generally, there is no duty to disclose without evidence of a confidential or fiduciary relationship.  *Morris*, 981 S.W.2d at 674.

### 1. March Capital Call Nondisclsure

¶ 50    For reasons previously discussed, Janice cannot prevail on her fraud by nondisclosure claim emanating from the March Capital Call.  Janice complains Bob had an "explicit duty to disclose" the March Capital Call and argues Bob "intended to induce [her] to take some action—not participating in the capital call to dilute the Interests Held in

Trust." Sec. Am. Pet. at 14. But Bob claims his failure to notify her was merely an "immaterial breach of the Decree because Janice had no right to participate pursuant to Section D and [because Janice] suffered no damages." Defs.' Resp. at 12.

¶ 51    Indeed, the Agreed Decree required Bob disclose "[w]ithin 24 hours of receipt . . . any written or digital information he receives regarding [] the Interests Held in Trust solely to the extent that such information is generally made available to all owners." Pl.'s Mot., Ex. B at 175. As the Court found, the March Capital Call falls within that contractual directive. *See*, *supra*, at 19. Bob did not disclose the March Capital Call and, therefore, did breach his obligation to Janice. *Id*. at 20. But, again, Section D protects Bob from any liability should Janice's Interests Held in Trust lose value:

> [Bob], at his election and without any liability by or to [Janice], may . . . make the requested capital contribution, as [Bob] shall determine in his sole discretion, and … shall have the right to receive any additional units issued by the subject company as a result of such additional capital contribution, even if such issuance is dilutive to the Interests Held in Trust.

Pl.'s Mot., Ex. B at 171. Section D's express language tampers Janice's ability to recover for Bob's nondisclosure, despite the devaluation of her Interests Held in Trust. Therefore, Janice's Motion for fraudulent nondisclosure emanating from the March Capital Call must be **DENIED**.

2. Tag-Along Rights Nondisclosure

¶ 52    As discussed above, Janice's tag-along nondisclosure claim fails because the UTAs did not trigger any rights owed to her under Section F. Janice again argues Bob had a contractual duty to tell her about the UTAs. Sec. Am. Pet. at 3. Bob claims he did not

have a duty because the UTAs did not dispose 50% of his Original Retained Interest. Defs.' Resp. at 12. The Court incorporates its above finding that Bob's sale did not reach the 50% threshold, did not trigger Section F, and therefore did not mandate Bob's disclosure. *See*, *supra*, at 15. Absent a duty to disclose, there can be no fraud by nondisclosure. *See Anderton v. Cawley*, 378 S.W.3d 38, 56 (Tex. App.—Dallas 2012, no pet.) (citing *Bright v. Addison,* 171 S.W.3d 588, 599 (Tex. App.—Dallas 2005, pet. denied)). Bob did not fraudulently fail to disclose his sale because he had no duty to do so. Janice's Motion on this claim must be **DENIED**.

## B. DEFENDANT'S SJ MOTION: TRADITIONAL

### a. Janice's Fiduciary Claims

¶ 53   As stated above, each of Janice's breach of fiduciary duty claims against Bob fail as a matter of law except for her duty of loyalty claim emanating from Bob's failure to disclose the March Capital Call, for which she is unable to recover. *See*, *supra*, at 13-18.

1. Duty of Loyalty

  i.      *Bob and the UTAs*

¶ 54   There is no genuine issue of material fact concerning Bob's duty of loyalty to Janice when he contracted into the UTAs. As stated, Section F is triggered when Bob disposes more than 50% of his Original Retained Interest. Pl.'s Mot., Ex. B. at 171-72 (Section F language). Upon such occurrence, Section F permits Janice to join her *pro rata* ownership with Bob's sale. *Id.* Previously discussed in detail, Bob's UTAs only amounted to 25% of his Original Retained Interest and, therefore, did not trigger Section F. *See*, *supra*

at 14-15; Defs' SJ Mot. at 131 (listing partitioned unit amounts). Without triggering, Janice has no rights under Section F. Accordingly, Janice's claim Bob breached his duty of loyalty by entering into the UTAs fails as a matter of law. Defendants' Motion is **GRANTED** on this claim.

### ii. *Bob and the Capital Calls*

¶ 55    Janice's claim Bob breached his duty of loyalty as applied to the March Capital Call fails as a matter of law. Indeed, the Agreed Decree expressly mandates Bob disclose certain information to Janice within 24 hours of receipt. Pl.'s Mot., Ex. R. at 483. But, as discussed, Bob's failure to adhere to the disclosure instruction is mitigated by Section D's exculpatory shield. *See*, *supra*, at 15-16. Said otherwise, under the Agreed Decree, Bob should have notified Janice of the March Capital Call but, also under the Agreed Decree, Bob is able to put his own interests ahead of Janice's, even if it dilutes her Interests Held in Trust. Defs.' Mot. at 32 (Section D). Bob self-dealt but is shielded from consequences via Section D. Moreover, Janice is not entitled to theoretical damages and seeks no equitable relief. *See* Pl.'s Equit. Rel. Br. Therefore, no genuine issue of material fact exists as to Janice's claim Bob breached his duty of loyalty by failing to notify her of the March Capital Call. Defendants' Motion on this claim must be **GRANTED**.

### iii. *Bob's Votes*

¶ 56    As a matter of law, Bob breached no duty of loyalty by voting for capital calls and by voting to benefit the Rangers. Janice relies on Section C to support her proposition Bob put his and/or the Rangers' interests before hers. Pl.'s Mot. at 11; Defs.' Mot. at 144

(Section C).  Section C contemplates a scenario where Bob's vote would dilute Janice's Interests Held in Trust more than Rangers' owners with her same unit shares.  *Id.*  There is no dispute: the March Capital Call and the August Capital Call diluted her Interests Held in Trust.  But there is no evidence her interests were diluted relative to other Rangers owners with her same shares.  Moreover, Bob's votes aligned with his fiduciary duties to the Rangers and the resulting devaluation was permitted under Section D.  Defs.' Mot. at 32 (Section D).  Based on the foregoing, there exists no genuine issue of material fact concerning Bob's votes and Bob's duty of loyalty to Janice.  Defendants' Motion on this claim must be **GRANTED**.

2.  Duty of Full Disclosure

¶ 57    As a matter of law, Janice cannot prevail on her claim Bob breached his duty of full disclosure by failing to notify her of the March Capital Call.  The evidence clearly provides Bob's duty to disclose information to Janice within 24 hours of receipt and that Bob failed to notify Janice of the March Capital Call.  *See* Pl.'s Mot., Ex. B. at 175; Ex. C. at 310.  Bob plainly skirted his fiduciary obligation to notify her.  However, Janice cannot recover for Bob's breach.  First, noting Janice seeks no equitable relief and, excluding Janice's speculative financial what-ifs, there is nothing before the Court showing Janice sustained recoverable damages by Bob's failure to disclose the March Capital Call.  *Washington*, 27 S.W.3d at 634; *Ramco*, 207 S.W.3d at 808.  Next, Section D exculpates Bob from any dilution to her shares.  *See*, *supra*, at 22-23.  Absent any genuine issue of

material fact, Bob did not breach his duty of full disclosure to Janice and Defendants' Motion on this claim must be **GRANTED**.

3. Duty to Preserve

¶ 58    No genuine issue of material fact exists as to Janice's claim Bob breached his duty to preserve.  Surely, constructive trustee-Bob owed Janice the duty of preservation.  However, the evidence before the Court—namely Sections D and E—were written by Janice's counsel under the pretext Janice *sell* her Rangers shares, not preserve or acquire more shares.  *See* Defs.' Mot. at 57, 32 (Sections D and E), 125.  The Court will not stray from the original intent of the parties and impose an additional preservation duty(s) on Bob.  Therefore, as a matter of law, Janice's claim Bob breached his duty to preserve her Interests Held in Trust fails and Defendants' Motion on this ground is **GRANTED**.

**b. Janice's Breach of Contract Claims**

¶ 59    As stated above, Bob breached the Agreed Decree only by failing to notify her of the March Capital Call, though Janice cannot recover from his breach.  Further, no genuine issue of material fact exists as to Janice's claim Defendants breached HBE's Amended Company Agreement.  *See*, *supra*, at 24-25.

1. Agreed Decree

    i.    *The Tag-Along Provision*

¶ 60    As a matter of law, Bob did not breach the Agreed Decree's tag-along provision when he did not notify Janice of his UTAs.  The Court incorporates its previous finding that Bob did not contract to sell 50% of his Original Retained Interest and, therefore,

never triggered Janice's rights under Section F. Pl.'s Mot., Ex. B. at 171-72 (Section F language); *see*, *supra*, at 14-16. As no genuine issue of material fact exists as to Janice's allegation Bob breached the tag-along provision, Defendants' Motion must be **GRANTED** on this ground.

### ii. *Failure to Notify Janice of the March Capital Call*

¶ 61    As discussed above, Bob breached the Agreed Decree's notification provision but Janice suffered no resulting recoverable damages. *See*, *supra*, at 24. Bob did not adhere to the Agreed Decree's notification provision and did not inform Janice of the March Capital Call. Defs.' Mot. at 165, 169 (Rangers Capital Call to Bob, Rangers Capital Call to HBE). But there is no evidence before the Court, absent Janice's abstract loss-of-opportunity arguments, that she is entitled to damages or relief in equity. *See*, *supra*, at 23; Pl.'s Equit. Rel. Br. Accordingly, Defendants' Motion on this ground must be **GRANTED**.

### iii. *Breach of Fiduciary Duties*

¶ 62    Janice's claim Bob breached the fiduciary duties listed in the Agreed Decree fails as a matter of law. Indeed, the Agreed Decree expressly delineates Bob's fiduciary obligations to Janice. Pl.'s Mot., Ex. B. at 169. It further describes Bob's fiduciary duties in the context of Janice's Interests Held in Trust and capital calls. *Id*. at 171. But perhaps most important is Section D's exculpatory language releasing Bob of breach liability. Defs.' Mot. at 32. There exists no genuine issue of material fact that Bob may, at his election and without liability to Janice, act in ways that may dilute Janice's Interests Held in Trust. *See,*

*id.*; *see, supra*, at 27.  Based on the foregoing, Defendants' Motion is **GRANTED** on Janice's claim Bob breached the fiduciary duties listed in the Agreed Decree.

2.  HBE's Amended Company Agreement

¶ 63   Janice's claim that Defendants breached HBE's Amended Company Agreement fails as a matter of law.  HBE's Amended Company Agreement has teeth only if Bob takes actions with respect to Janice's Interest Held in Trust that are violative of the Agreed Decree.  Pl.'s Mot., Ex. P. at 289 (HBE's Amended Company Agreement pertinent language).  The Court incorporates its above finding that Bob's UTAs did not trigger Section F and therefore did not violate the Agreed Decree.  *See*, *supra*, at 15.  Without an Agreed Decree violation, there can be no breach of HBE's Amended Company Agreement.  Accordingly, Defendants did not breach HBE's Amended Company Agreement and, absent any genuine issue of material fact, their Defendants' Motion on this claim must be **GRANTED**.

c.  **Janice's Fraud by Nondisclosure Claims**

¶ 64   Janice's fraud by nondisclosure claims each fail as a matter of law.  First, no genuine issue of material fact exists as to her claim Bob fraudulently failed to disclose the UTAs.  The Court incorporates its previous finding the UTAs did not trigger Bob's duty under Section F to disclose the sale to Janice.  *See*, *supra*, at 15; *Cawley*, 378 S.W.3d at 56 (no nondisclosure fraud without duty to disclose).  Defendants' Motion on this ground must be **GRANTED**.

¶ 65    Next, there exists no genuine issue of material fact concerning Janice's claim Bob fraudulently failed to disclose the March Capital Call. Again, the March Capital Call falls within Bob's contractual disclosure obligation and that Bob clearly breached. Pl.'s Mot., Ex. B. at 171; Defs.' Mot. at 165, 169 (Rangers Capital Call to Bob, Rangers Capital Call to HBE). However, "at his election and without any liability by or to [Janice]," Bob may receive additional shares at the risk of diluting Janice's Interests Held in Trust. Defs.' Mot. at 32. Once again, Section D shields Bob from his disclosure breach and Defendants' Motion on this claim must be **GRANTED**.

## C.  DEFENDANT'S SJ MOTION: NO-EVIDENCE

¶ 66    For the foregoing reasons, Bob is entitled to no-evidence summary judgment Janice's fiduciary duty claims concerning the March Capital Call, Janice's claim Defendants breached HBE's Amended Company Agreement, and Janice's claim Bob fraudulently failed to disclose the March Capital Call and the UTAs.

### a.  Janice's Fiduciary Duty Claims

¶ 67    Bob is entitled to no-evidence summary judgment on Janice's claim Bob breached his fiduciary duties to her by failing to notify her of the March Capital Call. Defendants contend there is no evidence: (1) Bob had a duty to permit Janice's capital call participation, (2) any breach of such duty occurred, (3) any breach proximately caused Janice any damage, or (4) Janice suffered any resulting damages. Defs.' Mot. at 27.

¶ 68    The Agreed Decree obligated Bob to notify Janice of the March Capital Call. Again, it is undisputed the Agreed Decree gave Bob 24 hours from receipt of information

regarding shares (i.e., capital calls) to contact Janice and that Bob never contacted Janice. *See* Pl.'s Mot., Ex. B. at 175. The summary judgment evidence supports Janice's contention that Bob self-dealt and put his own interests (a desire to grow his Rangers shares and usings his separate property to for a capital contribution that effectively diluted Janice's interests) above preserving Janice's Interests Held in Trust. *Id.* at 25-26; Defs.' Mot. at 32. But, despite Bob's skirting his fiduciary duty, Janice was not damaged in a manner uncontemplated by Section D (i.e.: dilution to the Interests Held in Trust). Moreover, Janice's assertion she would have participated in the capital call if she had received notice only lends itself, at best, to speculative non-recoverable damages. *Washington*, 27 S.W.3d at 634; *Ramco*, 207 S.W.3d at 808.

¶ 69    Janice has not produced any evidence sustaining the requisite elements for a breach of fiduciary duty claim. Namely, that Bob breached his duty, that his breach was actionable under the Agreed Decree's exculpatory provisions, or that she sustained any recoverable damages that were proximately caused by Bob's alleged breach. As such, Bob is entitled to judgment as a matter of law as to Janice's fiduciary-related claims. Defendants' Motion is **GRANTED** on this no-evidence ground.

### b. Janice's Breach of Contract Claim: HBE Amended Company Agreement

¶ 70    For reasons previously discussed, Janice cannot prevail on her claim Bob and HBE breached HBE's Amended Company Agreement. Defendants contend there is no evidence they materially breached HBE's Amended Company Agreement or that any breach caused Janice damage. But Janice argues Bob, as HBE's sole member, breached HBE's

Amended Company Agreement by entering into binding, dispositive UTAs. *See* Pl.'s Mot. at 11. Bob again argues Janice incorrectly groups his shares to comprise 50% of his Original Retained Interest. Defs.' Mot. at 12. He alternatively argues any resulting breach was immaterial and caused Janice no damages. *See id.* at 12-13.

¶ 71    The Court adopts its previous conclusion that Bob contracted to dispose only 25% of his Original Retained Interest and the sale did not trigger Section F. *See*, *supra*, at 15. Bob did not breach the Amended Company Agreement because he did not take any triggerable action with respect to Janice's Interests Held in Trust. *See* Pl.'s Mot., Ex. P. at 289. And while Janice argues she lost an opportunity to sell a portion of her shares to a third party, she ignores that her interests remained intact and were not devalued despite Bob's sale. Janice's alleged injuries are unsupportable and unrecoverable. *See Cawley*, 378 S.W.3d at 56. Accordingly, Defendants are entitled to summary judgment as to Janice's claim they breached HBE's Amended Company Agreement. Defendants' Motion is **GRANTED** on this no-evidence ground.

### c. Janice's Fraud by Nondisclosure Claims

1. March Capital Call Nondisclosure

¶ 72    As previously discussed, Janice cannot prevail on her fraud by nondisclosure claim emanating from the March Capital Call. Defendants challenge two elements of her claim: (1) Janice's reliance on Bob's non-disclosure, and (2) that Janice sustained any damages. Defs.' Mot. at 7. Janice claims that Bob twice committed fraud by nondisclosure: when he failed to disclose the March Capital Call and when he failed to disclose his contract

to sell Class B shares.  Sec. Am. Pet. at 14-15.  Janice insists Bob had an "explicit duty to disclose" the March Capital Call and argues Bob "intended to induce [her] to take some action—not participating in the capital call to dilute the Interests Held in Trust."  Sec. Am. Pet. at 14. However, Bob claims his failure to notify was an "immaterial breach of the Decree because Janice had no right to participate pursuant to Section D and [because Janice] suffered no damages."  Defs.' Resp.  at 12.

¶ 73    The Court adopts its previous conclusion Bob had and breached his duty to disclose the March Capital Call.  *See*, *supra*, at 20.  Again, the Court finds Section D wholly shields Bob from any liability in the event Janice's Interests Held in Trust lose value.  Pl.'s Mot., Ex. B at 171 (Section D language).  As discussed, its exculpatory language limits Janice's ability to recover for any failure to provide notice of capital calls, despite the devaluation of her Interests Held in Trust.  *Id.*  Bob is entitled to judgment as a matter of law as to Janice's claim for fraudulent nondisclosure emanating from the March Capital Call.  Defendants' Motion is **GRANTED** on this no-evidence ground.

2. <u>Tag-Along Provision Nondisclosure</u>

¶ 74    Finally, Bob is also entitled to no-evidence summary judgment as to Janice's fraud by nondisclosure tag-along claim.  Janice again argues Bob had a duty to tell her he entered into UTAs. Sec. Am. Pet. at 3.  The Court adopts its above finding Bob had no duty to disclose the UTAs to Janice.  *See*, *supra*, at 13-14.  Absent a duty to disclose, there can be no fraud by nondisclosure.  *Washington*, 27 S.W.3d at 634; *Ramco*, 207 S.W.3d at 808. As a matter of law, Bob did not fraudulently fail to disclose his sale because he had no duty

to disclose.  As such, Bob is entitled to judgment as a matter of law as to Janice's fraud by nondisclosure tag-along claim.  Defendants SJ Motion is **GRANTED** on this no-evidence ground.

### D. JANICE'S PARTIAL SJ MOTION: NO-EVIDENCE AND AFFIRMATIVE DEFENSES

¶ 75   Based on the foregoing, Janice's Motion as to no-evidence summary judgment and as to Defendants' affirmative defenses must be **DENIED AS MOOT**.  *See, e.g., Garza v. Energy Transfer Partners, L.L.C.*, No. 24-10208, 2025 WL 304527, at *3, n. 7 (5th Cir. Jan. 27, 2025) ("Once the court dismissed all of [Plaintiff's] claims, his motion challenging Defendants' affirmative defenses necessarily became moot.").

### IV. CONCLUSION AND ORDER

¶ 76   Based on the foregoing, it is hereby **ORDERED** that Janice's Motion is **DENIED**.

¶ 77   It is further **ORDERED** that Defendants' Motion is **GRANTED**.

¶ 78   To the extent not expressly granted or denied herein, all other relief sought by the parties in their respective motions for summary judgment is hereby **DENIED**.

_____
JERRY D. BULLARD
Judge, Texas Business Court,
Eighth Division

SIGNED: July 29, 2026.